IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

MARY BODDEN,

                  Plaintiff,

and

WISCONSIN PHYSICIANS SERVICE INSURANCE
CORPORATION,

                  Involuntary Plaintiff,

      v.

TARGET CORPORATION and
ACE AMERICAN INSURANCE COMPANY,

              Defendants.

OPINION AND ORDER

14-cv-159-slc

_____

      Plaintiff Mary Bodden alleges that she slipped and fell on wet tile when entering the store owned by defendant Target Corporation in Marshfield, Wisconsin.  Bodden is suing Target and its insurer, defendant Ace American Insurance Company, for common law negligence and a violation of Wisconsin's safe place statute, Wis. Stat. § 101.11.  Jurisdiction is present under the diversity statute.  28 U.S.C. § 1332.

      Defendants have moved for summary judgment.  Dkt. 24.  I am denying this motion because there is a genuine factual dispute regarding the condition of the floor and what Target knew or should have known at the time that Bodden fell.

      From the parties' proposed findings of fact and responses thereto, I find the following facts to be material and undisputed:

FACTS

      Plaintiff Mary Bodden is an adult resident of Wisconsin.  Defendant Target Corporation is a foreign corporation incorporated in Minnesota with its principal place of business located

in Minneapolis.  Defendant Ace American Insurance Company, Target's insurer, is a foreign corporation incorporated in Pennsylvania with a principal place of business in Philadelphia.

On January 31, 2013, Bodden went to the Target store in Marshfield, Wisconsin.  It had snowed the night before; although the Target lot had been plowed, it still was snow covered.  Before entering the store, Bodden stomped snow off her boots on the concrete outside.  Having lived in Wisconsin for 62 years, Bodden recognized that her shoes were going to be wet even though she had stomped them off.  Bodden entered the store at approximately 11:24 a.m.  The carpeted area just inside the store entrance was squishy with snow residue.[1]  As Bodden stepped with her right foot from the carpeting onto the tile floor, her right foot slipped.  Bodden fell onto her right arm and broke it.

At the time of Bodden's accident, David Nedd was the store's Assets Protection Team Leader, Tiffany Hartman was the team leader on duty and Kristine Gatlin was the guest services attendant responsible for generally monitoring the front end of the store.  Although no employee witnessed Bodden fall, Hartman, Gatlin, Nedd and Mary Langfeldt (another Target employee) responded to the scene of the accident.  Gatlin observed that there were "puddles" of "visible water" around Bodden as she sat on the floor after her fall.  Gatlin, Langfeldt and Hartman completed contemporaneous incident reports in which they stated that the floor was wet where Bodden fell.

---

[1] Both parties rely on Bodden's deposition testimony to support their position on whether the tile floor was wet at the time she fell.  Bodden's testimony on this point is confusing and seemingly contradictory.  Dkt. 36 at 26, 31-32.  Bodden initially testified that she did not remember whether she saw moisture or condensation on the tile floor before walking on it, *id.* at 26, but then she testified that she saw that the floors were wet after she entered the store and got to the tile floor, *id.* at 31.  However, Bodden also agreed that she did not see any water or moisture on the floor "prior to falling."  *Id.* at 32.  Given this testimony, the court cannot determine whether or when Bodden observed that the tile floor was wet.

Target's Marshfield store had video surveillance of the front entrance.  Nedd downloaded the footage of Bodden's entering the store.  There is an excerpt from the video starting at 11:16 and ending at 11:24 that shows the events immediately preceding Bodden's fall.  At 11:17 a.m., seven minutes before Bodden fell, Gatlin mopped the floor in the entryway near where Bodden fell.  Gatlin also had placed orange "wet floor" cones in the entryway, but Bodden did not see any cones upon entering the store.[2]  Between the time Gatlin finished mopping and the time Bodden entered the store, eight other customers had entered the store and walked through the area where Bodden fell.

Target employees testified that the entrance to the store is a high-traffic area that is particularly susceptible to wetness.  Target has "snow event" and safety protocols that state that safety cones and extra mats should be used in the entrance areas of its stores, exterior surfaces should be salted and sanded, carpeting should be mostly dry and free of puddles and more than half of the entrance matting in the store should be free of sand or salt residue.  Target staff did not use extra mats on the day of Bodden's accident.  Target's internal policies and procedure call for all employees to be on alert for slippery conditions.  Employees are trained to clean up after a spill or detection of another hazardous material on the floor and to place safety cones.  Target relies on employees to monitor floor conditions and receive notice from guests rather than utilizing standard, scheduled checks.  No Target employee was assigned to the specific area where Bodden slipped and fell.

---

[2] Because the testimony and photographs submitted by the parties do not establish the exact location of the cones *at the time* of Bodden's fall, that fact remains in dispute.

OPINION

## I.  Legal Standard

Bodden has brought claims for negligence under state common law and Wisconsin's safe place statute, Wis. Stat. § 101.11.  To establish common law negligence, plaintiff must show: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995).  In Wisconsin, everyone owes a duty "to the world at large," *Hornback v. Archdiocese of Milwaukee*, 313 Wis. 2d 294, 309, 752 N.W.2d 862 (quoting *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting), whenever it is "foreseeable that his act or omission to act may cause harm to someone." *Rolph v. EBI Companies*, 159 Wis. 2d 518, 532, 464 N.W.2d 667, 672 (1991) (citation omitted).  The defendant breaches this duty of ordinary care if it, "without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." *Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350 (quoting Wis JI-Civil 1005, following *Osborne v. Montgomery*, 203 Wis. 223, 242-43, 234 N.W. 372 (1971)).  Negligence is typically an issue for the fact-finder, and "summary judgment is uncommon in negligence actions because the court must be able to say that no properly instructed, reasonable jury could find, based on the facts presented, that [the defendant] failed to exercise ordinary care." *Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶ 2, 241 Wis. 2d 804, 807-08, 623 N.W.2d 751, 755-56.

The safe place statute differs in that it addresses unsafe conditions and creates a higher standard of care than that imposed by common-law negligence.  *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 170, 682 N.W.2d 857, 861

4

(internal citations omitted).[3]  The statute provides that "[e]very employer and every owner of a place of employment or a public building . . . shall so construct, repair or maintain such place of employment or public building as to render the same safe" and "shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." Wis. Stat. § 101.11(1).

Even under this heightened standard of care, employers and owners are not insurers for employees and frequenters of their premises and they are not required to do everything possible to make their premises more safe. *Megal*, 2004 WI 98, ¶ 9.  "Rather, the duty set forth by the statute requires an employer or owner to make the place 'as safe as the nature of the premises reasonably permits.'" *Id.* at ¶ 10 (quoting *Strack v. Great Atlantic & Pac. Tea Co.*, 35 Wis. 2d 51, 54, 150 N.W.2d 361, 362 (1967)).  "The "nature of the business" and the "manner in which [business] is conducted" are factors to be considered in assessing whether the premises are safe, within the meaning of § 101.11(1)." *Id.*  To be liable, an employer or owner must have actual or constructive notice that the unsafe condition exists. *Id.* at ¶ 11.  A defendant has constructive notice if the "defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it," considering "the surrounding facts and circumstances, including the nature of the business and the nature of the defect." *Id.* at ¶ 12-13 (citations and quotation omitted).

---

[3] Even if a plaintiff cannot prove that the owner violated § 101.11(1)'s higher standard of care, it does not necessarily follow that the plaintiff cannot prove that the owner violated the lower standard of common-law negligence. *Megal*, 2004 WI 98, ¶ 23.

## II.  Target's Knowledge of Hazard

Defendants contend that Bodden has no evidence of either a foreseeable risk of harm or an unsafe condition that existed at the time she fell, citing to Bodden's deposition testimony. But as noted above, Bodden was not clear about whether the tile floor was wet when she stepped onto it:

> Q:  – did you see any moisture or condensation on the tile floor before you walked onto it?
>
> A:  I don't remember.
>
> *Id.* at 26.
>
> * * *
>
> Q:  Do you know what caused you to slip?
>
> A:  Wet flooring, I would say.
>
> Q:  Are you assuming that just because something caused you to slip?
>
> A:  Well, as I came in I saw the floors were wet, but you know –
>
> Q:  As you came in, did you see the tile floor wet?
>
> A:  Not until I got to the tile floor.
>
> Q:  But before you got to the tile floor, could you see that it was wet?
>
> A:  I was not looking at the tile floor.
>
> Q:  Okay.  And so it is fair to state that prior to your falling, you didn't see any water or moisture on the tile floor; correct?
>
> A:  Correct.
>
> Q:  So it is also fair to state that you don't know what, in fact, it was that caused you to slip?
>
> A:  I don't know.
>
> *Id.* at 31-32.

Confusing though this may be, one reasonable conclusion a jury reach is that Bodden saw water on the tile floor when she stepped onto the floor but not before. Bodden also has adduced evidence that a number of Target employees saw her sitting in water on the tile floor after she fell (although none could say whether the water had been there before Bodden slipped and fell). Accordingly, there is at least some evidence from which the jury could conclude that the floor was wet when Bodden fell, and it will be up to the jury to decide what part of Bodden's testimony, if any, to believe.

Similarly, defendants argue that Bodden has no evidence that Target had actual or constructive notice of water on the floor because an employee had dry-mopped the area just seven minutes before Bodden fell and there is no evidence of how long the floor was wet–if it even *was* wet–after the mopping. *See Kaufman v. State St. Ltd. Partnership*, 187 Wis. 2d 54, 59, 522 N.W.2d 249, 252 (Ct. App. 1994) ("Ordinarily, constructive notice cannot be found when there is no evidence as to the length of time the condition existed."). Defendants contend that this case is similar to *Merriman v. Cash-Way, Inc.*, 35 Wis. 2d 112, 117, 150 N.W.2d 472, 475 (1967), in which the plaintiff claimed that a defectively constructed downspout allowed emerging water to run under a fence onto a parking lot where it froze into a patch of ice on which plaintiff slipped. The court in *Merriman* found that there was "a complete lack of proof to establish this hypothesis" because the store manager testified that the downspout directed water *away* from the parking lot and there was no evidence of melting of snow or ice in previous days. *Id.*

As Bodden points out, the facts in this case are distinguishable from *Merriman*. It is undisputed that on the day of the accident, the parking lot and outside entrance to the

Target store were snow-covered as a result of snowfall the night before. "[G]iven the weather that often occurs in February in Wisconsin, standing alone, a temporary natural accumulation of snow is insufficient to provide notice of an unsafe condition under the safe-place statute." *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶ 37, 356 Wis. 2d 1, 27-28, 850 N.W.2d 160, 172. However, in this case, seven minutes before Bodden fell, a Target employee had mopped the tile floor and placed orange cones warning customers of a potential hazard, pursuant to store safety protocols. *See Hannenbaum v. Direnzo* & *Bomier*, 162 Wis. 2d 488, 500, 469 N.W.2d 900, 905 (Ct. App. 1991) (finding actual notice of hazard where defendants' agent had salted front steps to building and defendants concerned enough to ask arriving clients about continuing weather conditions, even though they took no further precaution). It is also undisputed that the carpeting immediately inside the entrance to the store was "squishy" with snow residue. Although Target may not have known that a puddle or moisture existed at the exact time Bodden fell, employees admitted that the entrance to the store was known to be a high-traffic area particularly susceptible to wetness. In fact, surveillance video showed that eight other customers had entered the store and walked through the area where Bodden fell between the time Gatlin finished mopping and the time Bodden entered the store. From these facts, a reasonable jury could conclude that Target had notice that a hazard existed at the time of Bodden's fall.

In an unexplained statement at the end of their supporting brief, defendants contend that Bodden does not have the expert testimony required to claim that "Target's operations may have caused the floor to be wet." Dkt. 25 at 9-10. Because defendants did not develop any argument with respect to Target's "operations" or the overall reasonableness of the store's actions, I have

8

not considered whether Bodden has met any other element of her claims that may be related to these issues. *Puffer v. Allstate Insurance Co.*, 675 F.3d 709, 711 (7th Cir. 2012) (undeveloped arguments are waived). Although defendants discuss Target's duty of care and the reasonableness of its response in their *reply* brief, arguments first raised in a reply brief are waived. *United States v. Turner*, 203 F.3d 1010, 1019 (7th Cir. 2000); *Sunbeam Prods., Inc. v. Homedics, Inc.*, 587 F. Supp. 2d 1055, 1058 (W.D. Wis. 2008). Accordingly, defendants' motion for summary judgment will be denied.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Target Corporation and Ace American Insurance Company, dkt. 24, is DENIED.

Entered this 10th day of April, 2015.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

9